PIERCE, Chief Judge.
Defendant Grimsley appeals from a judgment and sentence entered by the trial Court after a jury had found her guilty of the crime of aggravated assault.
At the hearing on Grimsley’s motion to suppress admissions made by her at the police station to Detective Sirmons, the officer testified that he read Miranda warnings to her and then she also read them. He further testified that she said she did not want an attorney at that time. Grims-ley testified as follows, in part:
Q. Now at that time did he ask you if you wanted a lawyer?
A. Yes, sir, he did.
Q. And what did you say?
A. Well, I told him I didn’t know, because I had never been in trouble before and I didn’t know anything about it.
*672 Q. And then what was his response to that?
A. Well, he said, “Well, do you think you need an attorney or a lawyer to talk with me, to be able to talk with me?” I told him I didn’t know, what did he think, and he said, “I don’t know.”
I said, “Well, do you think I should tell the truth?” and he said, “Yes, by all means; the truth would be better than telling a lie because in the end it would show.” So I says—
Q. Okay, and then did you sign that? Did you sign a form ?
A. Yes, sir.
In State v. Craig, Fla.1970, 237 So.2d 737, the Supreme Court held that after a defendant has been informed of his right to an attorney, the determination for need of counsel is the defendant’s prerogative, and that any clear and unambiguous conduct by a person who has been advised of his rights which indicates his willingness to answer questions without a lawyer is sufficient.
In the case sub judice Grimsley signed the waiver of her rights and proceeded to answer the officer’s questions. Such conduct was sufficient to show her willingness to waive counsel and to make a statement. Testimony of her admissions to the police officer was therefore properly admitted.
Grimsley also contends that the lower Court committed reversible error in denying her motion for judgment of acquittal on the ground that a fatal variance existed between the accusation and the proof.
The pertinent part of the information charged that Grimsley “did unlawfully and feloniously assault one Gladys Graham with a deadly weapon, to-wit: a gun * * by shooting the said Gladys Graham with said gun * *
Gladys Graham testified that Grimsley fired a gun at her while she was sitting at a table in a bar, but the bullet did not hit her because she (Graham) moved her head.
It is clear that the information was not so indefinite as to mislead the accused and embarrass her in the preparation of her defense, or to expose her after conviction or acquittal to substantial danger of a new prosecution for the same offense, F.S. § 906.25, F.S.A., now CrPR 1.140(o) 33 F.S.A.
The allegation that Grimsley shot Gladys Graham was not necessary to charge the offense of aggravated assault, F.S. § 784.04, F.S.A.; Lindsey v. State, 1914, 67 Fla. 111, 64 So. 501, and, therefore failure to prove such allegation was not a fatal variance in the absence of a showing that the accused was misled or failed to secure a fair trial because of the inclusion of the allegation. Nelson v. State, Fla.App.1963, 157 So.2d 96, cert. den. 165 So.2d 178; Thomas v. State, Fla.App.1966, 183 So.2d 297; Ricks v. State, Fla.App.1969, 224 So.2d 413.
Affirmed.
LILES and McNULTY, JJ., concur.