664 P.2d 673

**STATE of Arizona, Appellee-Respondent,**

v.

**Ernest Keelen LINDEN,
Appellant-Petitioner.**

**Nos. 1 CA–CR 5712, 1 CA–CR 6149–PR.**

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 17, 1983.

Rehearing Denied April 13, 1983.

Review Denied May 24, 1983.

**132**

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel by Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for Appellee-Respondent.

Charles F. Hyder, P.A. by Charles F. Hyder, Phoenix, for appellant-petitioner.

OPINION

JACOBSON, Presiding Judge.

The defendant appeals from jury verdicts finding him guilty of burglary, first degree; two counts of kidnapping; and, two counts of armed robbery. The jury found the defendant not guilty of two counts of aggravated assault. Subsequent to perfecting an appeal in this court, the defendant filed a Petition for Post-conviction Relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. A Petition for Review of the trial judge's denial of relief pursuant to Rule 32 has been consolidated with the appeal.

On October 29, 1980, the defendant and Ed McCall posed as Scottsdale detectives to gain entrance into the home of Marvin and Debra Spiegel in Scottsdale, Arizona. After being admitted into the home by Mr. Spiegel, McCall pointed a gun at Spiegel, ordering him into the family room of the home, where they joined the defendant and Mrs. Spiegel. The defendant had already gone into the family room and placed the Spiegels' great dane outside. He had also ordered Mrs. Spiegel, who had arisen from the couch, to sit down and shut up. Both husband and wife were then seated on the couch in the family room.

After the defendant placed surgical type gloves on his hands, he removed tape from his pocket which he used to bind both of the victims' arms behind their backs. Mr. Spiegel was shoved onto the couch face first, as was Mrs. Spiegel. A blanket was placed over her. A third person then entered the home and went to the bedrooms where a search was apparently conducted for jewelry and other valuables maintained at the home.

A short time later, McCall held the gun to Mr. Spiegel's head and requested further information on the location of other valuable jewelry in the home. Shortly thereafter, all intruders left.

The defendant was arrested on February 25, 1981, at approximately 1:00 p.m. by Phoenix police officers. He was advised of his *Miranda* rights at that time, but no interrogation took place. He was then transported to the main station of the Phoenix Police Department and arrived there at approximately 1:30 p.m. The Phoenix police then notified Detective David Evans, of the Scottsdale Police Department, who was the officer chiefly responsible for conducting the burglary investigation of the Spiegel home.

Detective Evans arrived at the Phoenix Police Department at approximately 2:05 p.m. and he re-advised the defendant of his *Miranda* rights. After speaking with Evans for a short time, the defendant indicated that he wanted to talk about making a deal. Evans informed him that he did not have the authority to make a deal, that only the County Attorney's office had that power. The defendant then indicated that he wanted to speak with the County Attorney. This was at approximately 3:00 p.m.

Attempts were then made to contact the County Attorney, who arrived at the Phoenix Police Department at 4:00 p.m. to speak with the defendant. What occurred during that conversation was the subject of dispute both at the Motion to Suppress the defendant's statements and at the trial itself. The County Attorney spoke with the defendant for approximately 15 to 25 minutes and left.

Thereafter, at approximately 5:15 p.m., the defendant gave a lengthy statement implicating himself in the burglary.

At trial, the defendant's participation in the burglary was not contested. The evidence regarding his presence and participation was overwhelming. His only defense was that he was acting under duress and coercion, because he feared for his life and his family's safety if he did not cooperate with individuals whom he indicated were involved with organized crime. On appeal, the defendant raises the following issues:

(1) The trial court erred in admitting his confession;

(2) The trial court erred in denying a motion for directed verdict on the counts of kidnapping and aggravated assault;

(3) The trial court made prejudicial remarks during the trial;

(4) Prosecutorial misconduct deprived defendant of a fair trial; and

(5) The trial court abused its discretion in denying Rule 32 relief.

## ADMISSIBILITY OF THE CONFESSION

The defendant contends that the trial judge erred in denying his motion to suppress his confession as being involuntary because the evidence showed that: (1) he was denied the assistance of counsel after making a specific request for an attorney; (2) his statement was the result of a promise or a threat by the police; (3) the statement resulted after a long period of incommunicado interrogation; and, finally, (4) the statement was taken during a period of time when his attorney was attempting to contact him.

■ Initially, we note that the trial court's findings of fact regarding the admissibility of a confession will be upheld by this court if supported by adequate evidence in the record. *State v. Jerousek,* 121 Ariz. 420, 590 P.2d 1366 (1979). The evidence at the suppression hearing on whether the defendant had specifically requested an attorney was in conflict. The trial court has the duty to resolve conflicts in the evidence, and this court will uphold the findings if they are supported by adequate evidence in the record. *State v. Rhymes,* 129 Ariz. 56, 628 P.2d 939 (1981).

At the suppression hearing, all of the police officers testified that the defendant never made any specific requests for an attorney. In his taped confession, when asked whether he had requested an attorney, he stated that "It's been left pretty much up in the air. I don't believe that I ever did request an attorney." One of the officers, who had interviewed the defendant, testified that he could not recall any particular attorney's name mentioned by the defendant, but stated, "There may have been [some attorney's name mentioned]. There was a brief conversation about who he should get for an attorney. He was asking me, the way I took it, for my advice on who a good attorney would be." The officer advised the defendant that it would be improper to advise him on anything like that, since he was a defendant in a criminal case and he was a police officer.

■ We agree that if the defendant invoked his right to counsel during custodial interrogation, the confession following that invocation of counsel is invalid. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The real issue is whether the defendant's inquiry as to "who a good attorney would be" was sufficient to invoke his right to counsel, thus requiring an end to the interrogation.

The defendant's taped statement corroborates the police officer's testimony that whether or not the defendant specifically requested an attorney was left up in the air. Initially, we note that the defendant was a former police officer. He testified that he was trained in the giving of *Miranda* rights, and understood them. Furthermore, he was advised of his rights on three separate occasions prior to giving his statement. We also note that the defendant did not refuse to speak with the officers, and, in fact, requested the presence of the County Attorney in order to discuss a "deal" with him. The record clearly discloses that rather than pursuing the matter of counsel, the defendant desired to learn what the authorities had discovered about his connection to various criminal activities and to initiate a possible "deal" with the County Attorney.

134

■ The record shows that the defendant clearly understood his right to counsel and did not make a specific request for assistance of counsel. *See, United States v. Bettenhausen,* 499 F.2d 1223, 1231 (10th Cir. 1974) (no invocation of right to counsel where defendant asked interviewing officer if he needed counsel and officer responded that decision was for defendant to make); *Collins v. Fogg,* 425 F.Supp. 1339, 1341 (EDNY, 1977) *aff'd,* 559 F.2d 1202 (2nd Cir., 1977), *cert. denied,* 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977) (request to police officer for recommendation of attorney insufficient to invoke right to counsel and require cessation of questioning); *People v. Whitman,* 182 Colo. 6, 10, 510 P.2d 432, 434 (1973) (no invocation of right to counsel when defendant asked how to contact attorney but made no attempt to do so); *Grimsley v. State,* 251 So.2d 671, 672 (Fla.App. 1971) (no invocation of right to counsel where, after being informed of such right, defendant asked officer whether he thought counsel was necessary); *Reid v. State,* 478 P.2d 988, 999 (Okl.Cr.App.1970) (no invocation of right to counsel where defendant told whether to invoke such right was his decision and he thereafter made no effort to do so); *Commonwealth v. Weaver,* 274 Pa.Super. 593, 418 A.2d 565 (1980) (defendant did not invoke right to counsel by asking officer whether he thought she needed an attorney and officer told her that decision was hers to make).

Having concluded that defendant did not invoke his right to counsel, and that no necessity existed to terminate the interview with him, we turn to the other issues raised as to whether his confession was voluntary. Specifically the defendant contends that his confession was involuntary because it was made after many hours of incommunicado interrogation and after promises of a recommendation for a reduced sentence.

■ In determining the voluntariness of a confession, the trial court must look at the totality of the circumstances surrounding the confession. *State v. Hall,* 120 Ariz. 454, 586 P.2d 1266 (1978). As we noted above, the defendant was arrested at ap-

proximately 1:00 p.m. in the afternoon and gave a statement to the police at approximately 5:00 p.m. During that period of time he was advised of his *Miranda* rights on three separate occasions, conversed freely with the officers, spoke with a County Attorney regarding a "deal", made a phone call to his wife, and admitted that he had been treated courteously. This evidence belies the defendant's contention that he was being held "incommunicado."

■ The time which elapses between an arrest and a confession is not the sole determining factor of voluntariness, it is but one factor to be considered by the court. *State v. Arnett,* 119 Ariz. 38, 579 P.2d 542 (1978). We do not believe the length of time the defendant was in police custody prior to making his statement, approximately four hours, was so oppressive that the trial judge was required to find the confession involuntary on that basis.

However, the defendant claims that not only was he held and interviewed for a lengthy period of time, but that his statement was the result of promises and/or threats made to him by the police. This is in direct contradiction of the trial court, which found that no promises were made to the defendant in order to obtain his confession. The testimony of the two police officers, as well as the County Attorney who spoke with the defendant at his request, supports the trial court's finding that no promises were, in fact, made to him in order to elicit his statement.

■ We find there was substantial evidence in the record to support the trial judge's finding that the confession was not the result of duress, coercion or promises made by the police or prosecutor. We note that the evidence was conflicting and that the issue of voluntariness was presented just as forcefully and aggressively in this court as it was in the trial court. However, the forum for resolving conflicts in the evidence is the trial court. *State v. Rhymes, supra.* On appeal, we are limited to reviewing the record, and upholding the trial court, unless clear and manifest error exists. We find the record supports the trial judge's ruling.

Finally, the defendant argues that *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) required that his confession be suppressed. He argues that the evidence showed that he was prevented from speaking with his attorney during his period of custodial interrogation, at a time when his attorney was seeking to contact him. He argued at the trial court, that the police deliberately prevented his attorney from contacting him. However, as we have already concluded, the defendant did not invoke his right to counsel. Therefore, we find any reliance on *Escobedo,* to be misplaced. The accused did not repeatedly request counsel and was not denied an opportunity to speak with him.

## THE DENIAL OF DIRECTED VERDICTS ON THE KIDNAPPING AND AGGRAVATED ASSAULT CHARGES

The defendant's basic argument on these issues is that one wrongful act, a robbery, cannot furnish the basis for more than one criminal prosecution. This argument is premised upon what he perceives as clear legislative intent that robbery is usually an accumulation of a series of acts which are committed to effectuate a criminal purpose, each of which could be a violation of the law in and of itself, but that the legislature did not intend to have each act which might occur in the course of a robbery charged as independent crimes. He supports this argument by reference to A.R.S. § 13–1901(2) which defines "in the course of committing" as:

all the defendant's acts, beginning with the initiation and extending through flight from a robbery.

Based on this statutory definition, the defendant argues that the "kidnapping" of the Spiegels was one of the "acts" occurring during the robbery and should not have been charged as an independent crime. The defendant urges this court to limit A.R.S. § 13–1304 to "true situations of kidnapping" in order to prevent it being used by prosecutors as a "catch-all" charge against persons charged under A.R.S. § 13–1902, *et seq.*

The definition set forth in A.R.S. § 13–1901(2) only applies to the "in the course of committing" language found only in A.R.S. § 13–1903 and A.R.S. § 13–1904.[1] These statutes set forth additional elements which, if present "in the course of committing" a robbery, are deemed to be of a sufficiently aggravating nature that the legislature has increased the penalty for conviction under them.

The comments by the Code Commission make it clear that the new code sections A.R.S. § 13–1902 *et seq.,* rather than eliminating the criminality of other acts occurring during a robbery, intend to punish more severely those acts which create a more significant danger to the victim. *See,* Comments, Criminal Code Commission [1975] to A.R.S. § 13–1901 ("[Existing Robbery Offenses] replaced by a tripartite division covering certain aggravating factors between simple and armed robbery."); A.R.S. § 13–1902 ("if the assault is superfluous to either of these goals [robbery] it may constitute an offense other than robbery."); A.R.S. § 13–1904 ("any use of a deadly weapon or dangerous instrument to inflict injury above and beyond this initial force or fear defining robbery constitutes a further and separate crime.").

---

1. Those sections read as follows:

§ 13–1903. **Aggravated robbery; classification**
A. A person commits aggravated robbery if in the course of committing robbery as defined in § 13–1902, such person is aided by one or more accomplices actually present.
B. Aggravated robbery is a class 3 felony.
§ 13–1904. **Armed robbery; classification**
A. A person commits armed robbery if in the course of committing robbery as defined in § 13–1902, such person or an accomplice:

1. Is armed with a deadly weapon; or
2. Uses or threatens to use a deadly weapon or dangerous instrument.
B. For the purposes of this chapter, exhibition in the course of committing armed robbery of an article fashioned or used in a manner to lead any reasonable person to believe it to be deadly or dangerous is presumed evidence of its deadly or dangerous character.
C. Armed robbery is a class 2 felony.

In addition, we note that the comments to A.R.S. §§ 13–1902 and 13–1904 specifically cite *State v. Soders,* 106 Ariz. 79, 471 P.2d 275 (1970), in support of the proposition that acts superfluous to the robbery may be separately charged. In *Soders,* the defendant raised an argument similar to the one raised in this appeal. He argued that a restraint which is necessarily incidental to the commission of a robbery is not sufficient to support a conviction for kidnapping. Our Supreme Court rejected that argument, noting that the evidence in that case indicated that the restraint imposed upon the victim went far beyond the restraint necessarily incidental to the commission of the robbery. The court noted that kidnapping and robbery are two distinct crimes and held that:

> To constitute kidnapping, it is not essential that any personal property be taken. On the other hand, robbery does not require asportation or confinement of the victim which is unnecessary for its commission. The elements of the two offenses are different. One may be committed without the other.

*State v. Soders,* 106 Ariz. at 81, 471 P.2d at 277.

We reject the defendant's argument that a kidnapping cannot occur during a robbery because it is but one of the acts that occur during the course of the robbery.

We note that in *State v. Padilla,* 106 Ariz. 230, 474 P.2d 821 (1970) our Supreme Court specifically rejected the reasoning of *People v. Daniels,* 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969), wherein the California court held that brief movements of victims which are incidental to the commission of a robbery, and which do not substantially increase the risk of harm to the victims over and above that necessarily present in the crime of robbery itself, do not constitute the offense of kidnapping for the purpose of robbery. In *State v. Williams,* 111 Ariz. 222, 526 P.2d 1244 (1974) the court held that the essence of kidnapping is not the distance the victim is transported, but the unlawful compulsion against the will to go somewhere. *See also, State v. Rabon,* 115

Ariz. 45, 563 P.2d 300 (App.1977) (the facts of the case supported convictions for both kidnapping for a robbery and armed robbery).

The issue remaining is whether the evidence supports a conviction under our kidnapping statute, A.R.S. § 13–1304, which provides in part:

> A. A person commits kidnapping by knowingly restraining another person with the intent to:
>
> \*   \*   \*   \*   \*   \*
>
> (3) inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony.

From the evidence presented at trial, the jury could have found that the defendant and his accomplice gained access to the victims' residence by posing as police officers. Both the defendant and his accomplice were armed with guns. After answering the door, Mr. Spiegel was taken against his will to the family room where his arms were taped behind his back and he was made to lie face down on a couch while personal property was removed from his person as well as from his home. The evidence also showed that the victim's wife was forced to remain on the couch, her arms were also taped, and a blanket thrown over her. This evidence clearly supported a finding that the defendant or his accomplice restrained the victims with the intent to aid in the commission of a felony. A.R.S. § 13–1304(A)(3). The restraint of the victims certainly facilitated the robbery and burglary of the home, as well as the flight from the victims' home. Moreover, when the facts supporting the elements of kidnapping are eliminated, there are still sufficient facts to support the conviction of armed robbery.

Regarding the defendant's claim that the trial court erred in denying his motion for directed verdict on the two counts of aggravated assault, it is noted that he was acquitted on both of these charges. Therefore, he is precluded from raising this issue on appeal. *C.f., State v. Frederick,* 129 Ariz. 269, 630 P.2d 565 (App. 1981).

## TRIAL COURT'S REMARKS TO THE JURY AND PROSECUTOR'S CONDUCT AT TRIAL

The defendant next contends that certain remarks made by the court to the jury were prejudicial to his right to a fair trial. At a point during the cross examination of the defendant by the County Attorney, the following exchange took place:

Q (by Mr. Brownlee, County Attorney): That's what I didn't understand. Just so I know, did you assume that statement to be talking about testifying?

A (Linden): No. About the deal that we had made.

Q: I see and the next question was, that it was up to me to call you, not you to call me.

A: Yes, sir.

Q: Mr. Linden, you still have that deal; the move is yours.

A: Mr. Hyder (appellant's trial counsel) if the county attorney—

Q (the court): Are there additional questions that you wish to ask?

A (Mr. Hyder): Well, I would like to approach the bench.

Q (the court): We will take a noon recess and you certainly may talk with Mr. Brownlee if you wish. Are there additional questions you have of Mr. Linden?

### REDIRECT EXAMINATION BY MR. HYDER

Q: No—excuse me, I do have a question. If Mr. Brownlee offers to dismiss these cases for your testimony, will you take it?

A: Yes, sir.

Q (Mr. Hyder): I have no further questions.

The Court: Thank you Mr. Linden, you may step down (witness excused).

The defendant characterizes this exchange as being that defense counsel requested permission to approach the bench "to make a motion for mistrial, and the court stated a noon recess would be taken and that counsel could speak with the prosecutor if desired." The argument is then made that the prosecutor's statement put him in a position of having the jury believe that he was guilty, and that if he agreed with the State of Arizona during the recess, the state would give him his "deal". He concludes that the court's remark to defense counsel made it appear that in the court's opinion he was guilty, and if counsel for both sides would agree to a plea, the trial judge would accept it. He submits that this was a comment on the evidence.

Interwoven into the claim of prejudice resulting from the court's remark is an objection to what he describes as the "duality" of the role of the prosecutor as both witness and prosecutor. He argues this conduct deprived him of a fair trial. He also argues that the prosecutor's misconduct in denying that there was a "deal" and then later admitting the "deal" at trial deprived him of a fair trial.

While the prosecutor's statement to the defendant during cross examination appears, at first glance, to be improper, in the context in which it was spoken, we do not find it grounds for reversal.

The subject of a "deal" was brought up in cross examination of one of the state's witnesses, a police officer, who was present during the alleged "deal". The defendant specifically testified about discussions relating to the "deal" on direct examination. Thereafter, the prosecutor cross examined him with respect to his understanding of the terms of the "deal", and other circumstances attendant to the taking of his statement.

Obviously, defense counsel intended to present the question of voluntariness to the jury through this examination, i.e., whether a promise had been made to the defendant in return for his statement. However, this line of inquiry necessarily touched on circumstances surrounding plea bargaining or offers to plead guilty in return for a consideration from the prosecutor.

A two-tiered determination of voluntariness exists in Arizona. *State v. Stone*, 122 Ariz. 304, 594 P.2d 558 (App. 1979). While due process will be adequately served if the trial judge alone determines

the voluntariness of confessions, it is the defendant's prerogative to present the issue to the jury if he so determines. The trial court must instruct on voluntariness if the evidence has raised a question for the jury. *State v. Stone,* 122 Ariz. at 311, 594 P.2d at 565.

█ Defense counsel's intention to place the voluntariness of the defendant's confession *before the jury, by showing that the statement was the result of a "deal"* with the police or prosecutor, necessarily implicated the prohibitions against introducing evidence of a plea discussion with the prosecutor. *See,* Rule 410, Arizona Rules of Evidence; Rule 17.4(f), Arizona Rules of Criminal Procedure. Federal courts which have dealt with this problem have held that a defendant is not entitled to put on evidence of plea bargaining to show the length the government was willing to go to prove its case. *See, U.S. v. Verdoorn,* 528 F.2d 103, 107 (8th Cir.1976) (evidence of plea bargaining was excludable under Rule 11(e)(6), Federal Rules of Criminal Procedure, as against either party). However, when a defendant himself injects the plea bargaining into his direct testimony, he cannot obtain reversal under Rule 11(e)(6), which prohibits evidentiary use of statements made during plea bargaining discussions. *U.S. v. Doran,* 564 F.2d 1176 (5th Cir.1977) *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). *See also, People v. Jackson,* 24 Ill.App.3d 700, 321 N.E.2d 420 (1974) (the prosecutor could inquire further on cross examination about negotiations where the defendant raised the issue on direct examination).

█ We therefore hold that evidence of plea bargaining was not in violation of, Rule 410, Arizona Rules of Evidence, because the defendant clearly attempted to convince the jury that his statement was involuntary as a result of promises made by the prosecutor. Therefore, he will not be heard to object on appeal that the circumstances surrounding the giving of his statement should not have been inquired into on cross examination by the prosecutor. Under the circumstances of this case, the pros-

ecutor was clearly entitled to examine the defendant with respect to the circumstances surrounding the bargaining discussions.

The defendant, however, argues that the prosecutor's cross examination on this subject was unfair and denied him a fair trial based upon the "duality" of the prosecutor, as both witness and examiner. To support this position, he cites a number of cases, all of which we find distinguishable: *Roby v. State,* 587 P.2d 641 (Wyo.1978) (the court noted that the prosecutor's examination of a defense witness about a conversation he had with the witness over the phone was not a proper procedure. The court also noted that counsel should be aware of § 3.1(f), ABA Standards Relating to the Prosecution, that the "prosecutor should avoid interviewing a prospective witness except in the presence of a third person"); *Jackson v. United States,* 297 F.2d 195 (D.C. Cir.1961) (court chastised defense trial counsel for his cross examination of a police officer regarding a phone conversation the defense attorney allegedly had with the officer, where the defense attorney suggested inferences he was not prepared to prove without taking the witness stand himself); *United States v. Vereen,* 429 F.2d 713 (D.C. Cir.1970) (defense counsel interviewed the victim of a robbery *without anyone else present* and was faced with a witness who changed his testimony at trial); *People v. Spencer,* 182 Colo. 189, 512 P.2d 260 (Colo. 1973) (the district attorney not only was prosecuting the defendants for perjury, but took the stand during the trial and testified as to his belief that the defendants had lied before the grand jury). These cases all relate to situations where the role of the prosecutor did, in fact, become "dual" in nature. In those cases, the prosecutor either took the stand or "testified" in the guise of cross examination because there *were no other witnesses to the conversations.*

█ We find none of these cases support the defendant's position that the examination by the prosecutor in this case was improper. There was ample evidence presented at trial that not only the prosecu-

tor, but two police officers were present during the discussions with the defendant. *State v. Howard,* 27 Ariz.App. 339, 554 P.2d 1282 (1976) suggests that when a police officer is present when a county attorney takes a statement from a defendant, the county attorney will not be prevented from trying that defendant, simply because the defendant may wish to use him as a witness at trial. *See also, State v. Bishop,* 118 Ariz. 263, 576 P.2d 122 (1978) *vacated,* 439 U.S. 810, 99 S.Ct. 69, 58 L.Ed.2d 103 (1978) (holding that the prosecutor's testimony at a pretrial motion, given at the insistence of the defendant, did not prevent him from prosecuting the case where the state proved the voluntariness of a confession independently through the testimony of a detective).

In this case, it is abundantly clear that there was a dispute as to the existence of an agreement. The defendant insisted that his statement to the police had been made with the belief on his part that the prosecutor would recommend a reduced sentence on another charge. The prosecutor attempted to show through cross examination that the defendant had also been told of his need to testify and had not, in fact, been given a "deal." At the beginning of his taped statement, the defendant indicated that no "deals" had been made. During cross examination, there was testimony that he had given his statement because he felt he had no other alternative and only wanted to help himself.

The issue of the voluntariness of the defendant's confession was clearly before the jury. There could have been little doubt in the jurors' minds at the point when Mr. Brownlee made the objected to statement, that the defendant, for his part, believed he had one deal, and Mr. Brownlee, for his part, believed that the conversation had consisted of an entirely different type of offer or "deal". We think that the statement by Mr. Brownlee did nothing more than recapitulate the alleged plea negotiations. His statement, in the context of the entire examination and cross examination of the defendant, was not reversible error. While it is argued that the prosecutor's statement put the defendant in the position of having the jury believe he was guilty, we think it added little to conclusions the jury might have already drawn from evidence regarding the attempts to make a "deal" by the defendant.

■ In addition, we note that while the defendant claims in his opening brief that defense counsel's request to approach the bench was made for the purpose of moving for a mistrial, nothing in the record supports this contention. The failure to object to improper remarks of counsel generally constitutes a waiver. *C.f., State v. Hernandez,* 96 Ariz. 28, 391 P.2d 586 (1964). We note that not only did defense counsel fail to renew his request to approach the bench, make a record, or state an objection to the prosecutor's statement, but continued to examine his witness regarding the plea bargain.

There is nothing to support a conclusion that the trial judge acted arbitrarily or in disregard of defense counsel's right to make a record, when she stated that a noon recess would be taken.

■ We also reject any suggestion that the trial court's response, when he requested to approach the bench, was a reversible comment on the evidence. The judge's statement to counsel did not express to the jury her opinion on what the evidence showed or failed to show. *State v. Godsoe,* 107 Ariz. 367, 489 P.2d 4 (1971).

## ADMISSIBILITY OF EVIDENCE REGARDING PRIOR BAD ACTS

The defendant assigns as error the admission of evidence at trial, which tended to show his willing participation in other criminal activity, specifically the planning of a "drug rip-off." He argues that he was never notified by the state as to the witnesses' proposed testimony and that, in any event, it was an improper method of rebutting the defendant's character testimony. We reject both arguments.

■ A letter filed with the Clerk of the Superior Court on August 28, 1981, dated

the same date, advised trial counsel that the County Attorney intended to call four rebuttal witnesses. They were all called at trial. Counsel was advised as to the testimony the witnesses would give if called, including testimony that the defendant planned to travel with another person to California to participate in a "drug rip-off." We think this written notice to defendant's trial counsel constituted adequate disclosure under Rule 15.1(f), Arizona Rules of Criminal Procedure.

The defendant also contends that the admission of evidence relating to prior bad acts was prohibited by Rule 404, Arizona Rules of Evidence. During cross examination of the state's rebuttal witness, Nina Marie Louie, defendant's trial counsel elicited testimony from her that the defendant was going to participate in a "drug rip-off" in Southern California.

This information was obtained after exhaustive examination into both Ms. Louie's and other persons participation in an alleged criminal organization. During Ms. Louie's testimony, there were numerous references to other criminal activities allegedly planned by the criminal organization including murder, drug sales, and burglaries. We note that defense counsel insisted on going into other areas of criminal activity engaged in by the organization. Apparently this testimony was elicited in order to bolster the defense of "coercion" urged in connection with the Spiegel robbery. The County Attorney objected strenuously to the line of questioning. Ms. Louie testified that the defendant was not present during the conversation about the Southern California drug rip-off, but was to be notified regarding the details of the impending transaction. Mr. Campagnoni, another state rebuttal witness, testified that the defendant expressed his willingness to engage in the drug rip-off during a meeting of the organization. Defense counsel objected to the admission of this witness' testimony on the grounds that the prosecutor was intimating by inuendo that the defendant was engaged in a conspiracy to commit some other crime which had nothing to do with the case. The court, in denying the motion for mistrial, noted that the entire topic of other criminal activity had been brought up by defense counsel through the witness, Ms. Louie.

The issue of the defendant's willing participation in the crimes for which he was charged was an aggressively argued issue from beginning to end. The defendant claimed he acted under duress which was being directed at him by a criminal organization. His willing participation in other criminal activities with members of the organization was relevant to show the absence of duress and/or intent to participate in crimes carried out by the organization. Therefore, not only is the defendant precluded from objecting to the admission of testimony relating to prior bad acts, having introduced it himself, but the evidence was admissible for rebutting proof of duress or lack of intent. Rule 404(b), Arizona Rules of Evidence.

The defendant also contends that the conflicts in testimony between several of the rebuttal witnesses demonstrates their untruthfulness and a conviction resting on this testimony would be unfair. The inconsistencies in the witnesses' testimonies were apparent. Therefore, the credibility to be given their testimony became a question for the jury. *State v. Money*, 110 Ariz. 18, 514 P.2d 1014 (1973). There is no support in the record for the argument that the state, because of these inconsistencies, knew it was using perjured testimony.

### DENIAL OF POST–CONVICTION RELIEF

Subsequent to perfecting this appeal, the defendant sought post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. In his Petition for Post-conviction Relief, the defendant asserted the existence of newly discovered, material facts which allegedly consisted of evidence that the state had an unwritten agreement with the witness, Valenda Harper, for immunity with regard to crimes she admitted committing. The County Attorney objected to the granting of relief under

Rule 32, claiming that any agreement with the witness had expired on July 15, 1981, approximately two months prior to trial, and therefore, she was not testifying pursuant to any agreement with the County Attorney's office. Furthermore, the County Attorney argued that even if the evidence had been available to the defense, it would not have changed the verdict.

The defendant relies upon the holdings in *State v. Holsinger,* 115 Ariz. 271, 564 P.2d 1238 (1977) and *State v. Maddasion,* 130 Ariz. 306, 636 P.2d 84 (1981), in support of his argument that the failure to disclose the existence of a grant of immunity or payment for testimony constitutes reversible error.

Neither of the cases relied upon support the conclusion that, under the facts of this case, even assuming the existence of an agreement, post-conviction relief should have been granted. As the trial court noted in its minute entry of March 5, 1982, denying relief, in addition to showing the existence of the agreement for immunity, the defendant must demonstrate that such information, if known to the jury, would probably have changed the verdict. The court noted that a review of the proceedings indicated that Ms. Harper's testimony was at best cumulative to that of Arnold Merrill, George Campagnoni, and Nina Marie Louie, all of whom testified to facts upon which the jury could determine the reason or motivation for the defendant's participation in the Spiegel burglary. The trial court determined that even assuming that an unwritten agreement for immunity could be established by the evidence, that in light of all of the evidence presented at trial, the "newly discovered" evidence would not have changed the verdict and, therefore, relief was denied.

We note that the alleged nondisclosure which occurred in this case concerned a rebuttal witness. Although intending in no way to demean the prosecutor's obligation to furnish evidence which impacts on a witness' credibility, the instant case is clearly distinguishable from *State v. Holsinger, supra,* and *State v. Maddasion, supra.* In both of those cases, the witness was critical to the state's case. In this case, Ms. Harper's testimony was accurately described by the trial court as cumulative at best. Her testimony, like the testimony of three other rebuttal witnesses, was admitted for the purpose of rebutting the affirmative defense of duress. There was substantial, if not overwhelming, evidence presented by Ms. Louie and George Campagnoni regarding the defendant's apparent willing participation in criminal activities with the members of a criminal organization.

To state a "colorable claim" for relief under Rule 32, the court must determine whether the allegation, if taken as true, would have changed the verdict. *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976) *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). In this case, at most, the evidence would have shown that there was an agreement not to prosecute a rebuttal witness for crimes other than the one in which she was testifying. In addition, and it is not controverted, that evidence still would have shown Ms. Harper was testifying because of fear of the members of the criminal organization in which the defendant was a member. Although she testified at several points that she was not in fear of her life from the defendant, it was clear that she, in fact, feared for her life from other members of the criminal enterprise in which he was a member. We are satisfied that the newly discovered evidence would have only served to impeach or contradict Ms. Harper's motivations for testifying at trial. It would not have changed the verdict.

Judgment affirmed.

CONTRERAS and BROOKS, JJ., concur.