NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

STATE OF ARIZONA, *Appellee*,

*v.*

JOSEPH JOHN SANDOVAL, *Appellant*.

No. 1 CA-CR 13-0123
FILED 4-29-2014

_____

Appeal from the Superior Court in Maricopa County
No.  CR2011-159975-001
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Kerri L. Chamberlin
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Jon W. Thompson joined.

---

**G O U L D**, Judge:

**¶1**　　　　Joseph John Sandoval ("Defendant") appeals from his convictions and sentences for attempted first degree murder, aggravated assault, misconduct involving weapons, discharge of a firearm at a structure, endangerment, and tampering with physical evidence. Defendant's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), advising this Court that after a search of the entire appellate record, no arguable ground exists for reversal. Defendant was granted leave to file a supplemental brief *in propria persona*, and did so.

**¶2**　　　　Our obligation in this appeal is to review "the entire record for reversible error." *State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999). We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and 13-4033(A)(1) (West 2014).[1] Finding no reversible error, we affirm.

### Facts and Procedural History[2]

**¶3**　　　　On November 26, 2011, shortly after midnight, Phoenix Police Officers Anthony Daley and Travis Aguirre responded to a trespassing call at a trailer park. As they approached the trailers, several people scattered and fled the area. Officer Daley noticed a vacant trailer

---

[1]　　Unless otherwise specified, we cite to the current version of the applicable statutes because no revisions material to this decision have occurred.

[2]　　We view the evidence in the light most favorable to sustaining the convictions and resulting sentences. *See State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

with an open door. Approaching the trailer, Officer Daley announced, "Phoenix Police Department. If you're inside, make yourself known." After receiving no response, Officer Daley climbed into the trailer, and saw Defendant in front of him, pointing a handgun at him. As Officer Daley went for his gun, Defendant shot him in the stomach and the leg, and Officer Daley jumped out of the trailer to take cover. Officers Daley and Aguirre retreated to the southwest corner of the trailer, and radioed for assistance. Upon the arrival of additional police officers, Defendant sprayed two bursts of gunfire through the walls of the trailer, hitting a nearby trailer and vehicles, and narrowly missing residents of the trailer park and police officers.

¶4 Defendant remained inside the trailer for several hours and, after a lengthy standoff with police, eventually surrendered. The police subsequently recovered a disassembled Glock inside the trailer that matched cartridge casings found at the scene, and both of Defendant's hands tested positive for gunshot residue.

¶5 The State charged Defendant with one count of attempted first-degree murder, a class two dangerous felony; five counts of aggravated assault, class two dangerous felonies; one count of misconduct involving weapons, a class four felony; two counts of discharge of a firearm at a structure, class three dangerous felonies; one count of discharge of a firearm at a structure, a class two dangerous felony; six counts of endangerment, class six dangerous felonies; and one count of tampering with physical evidence, a class six felony.[3] The State alleged that Defendant was on community supervision at the time of the subject offenses and had previously been convicted of three historical felonies; the State also alleged multiple aggravating circumstances.

¶6 The State presented the testimony of several police officers and witnesses at trial. Defendant did not testify and did not present any evidence. On November 26, 2012, the jury found Defendant guilty on all counts, with multiple aggravators, and the court subsequently found that Defendant had three historical prior felony convictions and committed the subject offenses while on community supervision from the Department of Corrections ("DOC"). On February 15, 2013, the court sentenced

---

[3] Defendant was also charged with one count of threatening or intimidating, a class 6 felony; this count was dismissed prior to trial.

Defendant to a total of 87.75 years of imprisonment. Defendant filed a timely appeal.

**Discussion**

**¶7**        Defendant argues the State knowingly withheld material information concerning the bullet count of Officer Daley's weapon. Defendant contends that the police knew a bullet was missing from Officer Daley's magazine, but they did not disclose this fact prior to trial. In addition, Defendant asserts that several officers who testified at trial lied when they testified there was no missing bullet.

**¶8**        According to Defendant, the missing bullet is a material fact because it supports his claim that Officer Daley fired his weapon first, and that Defendant, who asserts he did not know Daley was a police officer, shot Daley in self defense. Defendant also appears to claim that the missing bullet proves that Officer Daley's gunshot wound to his leg was the result of an accidental, self-inflicted gunshot wound from Daley's own weapon.

**¶9**        We note there was no evidence presented at trial that Officer Daley fired his weapon at Defendant, or that he shot himself in the leg. Defendant's allegations regarding the relevancy of the missing bullet were presented for the first time by Defendant at his sentencing.

**¶10**        It is a violation of due process if the State fails to disclose clearly exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Clearly exculpatory evidence is evidence that is favorable to the defendant and would have created reasonable doubt if it had been presented to a jury. *State v. Montano*, 204 Ariz. 413, 424, ¶ 52, 65 P.3d 61, 72 (2003); *State v. O'Dell*, 202 Ariz. 453, 457, ¶ 10, 46 P.3d 1074, 1078 (App. 2002).

**¶11**        Our review of the record shows that there is no *Brady* violation in this case. The State provided Defendant with photographs documenting the bullet count in Officer Daley's spare magazine prior to trial. Defendant advised the court at sentencing that he was aware the photographs showed there was a bullet missing from one of Officer Daley's magazines, and that he had discussed this fact with his attorney.

**¶12**        Defendant also asserts that the police officers falsely testified at trial when they claimed (1) there was no bullet missing from Officer Daley's magazine and (2) Officer Daley did not fire his gun. We disagree. Defendant has made no showing that the officers were lying or that the prosecutor knowingly presented false testimony. Rather, the record

reflects that the officers made inconsistent statements and were mistaken about the bullet count; such testimony does not, as Defendant claims, amount to perjury. *State v. Linden*, 136 Ariz. 129, 140, 664 P.2d 673, 684 (App. 1983); *State v. Ferrari*, 112 Ariz. 324, 334, 541 P.2d 921, 931 (1975).

¶13 In support of his perjury claim, Defendant directs our attention to an October 13, 2013 letter from the Phoenix Police Department's Professional Standards Bureau. This letter summarizes the police department's investigation of Defendant's claim that the officers testified falsely at trial.

¶14 The letter does not support Defendant's allegations. The letter explains that Detective Roe, the officer who conducted the bullet count on Officer Daley's weapon, "did not inspect the spare magazines using the standard protocol by visually inspecting and photographing them in an unloaded configuration." The letter goes on to state that by failing to follow this protocol, the inspecting officer did not observe that one bullet was missing from Officer Daley's spare magazine. However, the letter concludes that "at the time of trial, any discrepancies relating to the bullet count by officers have been attributed to information they believed to be true and accurate."

¶15 We also note that the officers were cross-examined by defense counsel about the bullet count at trial. *State v. Rivera*, 210 Ariz. 188, 190, ¶ 11, 109 P.3d 83, 85 (2005) (stating that while prosecutors may not knowingly allow witnesses to falsely testify, "cross-examination is the appropriate tool for probing the truthfulness of a witness's statements"). Thus, the credibility of the officers on this issue was left for the jury to determine. *Linden*, 136 Ariz. at 140, 664 P.2d at 684. Indeed, the jury was instructed by the trial court that it was their duty to determine the credibility of all witnesses. *See Hoffa v. United States*, 385 U.S. 293, 311-12 (1966) (holding that it was not a due process violation to permit the testimony of an informant whom defendant contended offered perjured testimony at trial where the informant was "subjected to rigorous cross-examination, and the extent and nature of his dealings with federal and state authorities were insistently explored"; "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury").

¶16 Finally, Defendant argues that the prosecutor's statements during closing arguments constituted prosecutorial misconduct. Prosecutors have wide latitude in their closing arguments to the jury.

*State v. Comer*, 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Harrod*, 218 Ariz. 268, 278, ¶ 35, 183 P.3d 519, 529 (2008) (internal citation omitted). "We will not reverse a conviction because of a prosecutor's improper comments during closing argument unless there is a reasonable likelihood the misconduct could have affected the jury's verdict." *State v. Edmisten*, 220 Ariz. 517, 524, ¶ 23, 207 P.3d 770, 777 (App. 2009) (internal citations omitted).

**¶17** Our review of the record does not reveal any prosecutorial misconduct. The State's closing arguments did not constitute a denial of due process. *Harrod*, 218 Ariz. at 278, ¶ 35, 183 P.3d at 529.

**Sentencing: Release of Community Supervision from DOC**

**¶18** After trial, the court determined, by both clear and convincing evidence and beyond a reasonable doubt, that Defendant was on community supervision from DOC at the time of the subject offenses. At sentencing, the court stated that "because [Defendant] was on parole[4] at the time the present offenses were committed, no sentence may be imposed that is less than the presumptive sentence pursuant to A.R.S. section 13-708(A), and [D]efendant is not eligible for suspension or commutation or release on any basis until the sentence imposed is served." The court then sentenced Defendant to aggravated prison terms on counts one through six, and eleven through sixteen; the court imposed presumptive prison terms as to counts seven through ten, and count eighteen. Further, the court ordered that Defendant was eligible for a term of community supervision after serving approximately eighty-five percent of each prison term imposed.

**¶19** A defendant sentenced under A.R.S. § 13-708(A) must serve a flat-time sentence, e.g., as opposed to being eligible for release after serving eighty-five percent of a prison sentence. *See* A.R.S. § 41-

---

4       While A.R.S. § 13-708(A) refers to release from prison on "parole" and "community supervision," and the trial court used the term "parole" at sentencing, the legislature eliminated the possibility for parole from prison for crimes committed after January 1, 1994, and replaced it with eligibility for "community supervision." *State v. Rosario*, 195 Ariz. 264, 268, ¶ 26, 987 P.2d 226, 230 (App. 1999).

1604.07(A). The trial court did not, however, impose flat-time sentences in Defendant's case; rather, it ordered Defendant to serve the usual eighty-five percent prison terms.

**¶20** Thus, pursuant to A.R.S. § 13-708(A), the court's failure to sentence Defendant to flat-time for each prison term constituted an illegally lenient sentence. However, because the State has not filed an appeal or a cross-appeal on this issue, we do not have jurisdiction to address it. *State v. Dawson*, 164 Ariz. 278, 286, 792 P.2d 741, 749 (1990).

**¶21** The trial court also stated that based on A.R.S. § 13-708(A), it lacked the discretion to impose less than a presumptive prison term in Defendant's case. Unlike the imposition of an illegally lenient sentence, based on Defendant's appeal we do have jurisdiction to review whether the trial court imposed an illegally harsh sentence. *Clark*, 196 Ariz. at 537, ¶ 30, 2 P.3d at 96; *Dawson*, 164 Ariz. at 284, 792 P.2d at 747.

**¶22** This court recently held that the sentencing enhancements contained in A.R.S. § 13-708(A) must be proved to a jury beyond a reasonable doubt. *State v. Large*, 2014 WL 1226731, *4, ¶ 16 (Ariz. App. Div. 1, March 25, 2014); *see Alleyne v. United States,* __U.S. __, 133 S.Ct. 2151, 2163-64 (2013) (holding that "facts that increase mandatory minimum sentences must be submitted to the jury" and established "beyond a reasonable doubt" pursuant to the 5th and 6th Amendments). Moreover, although *Alleyne* had not been decided at the time Defendant was convicted and sentenced, its holding is applicable here because *Alleyne* presented a new rule of constitutional law and Defendant's case was pending on direct review at the time *Alleyne* was decided. *Large*, 2014 WL 1226731 at *4, ¶ 16.

**¶23** We review sentencing error under A.R.S. § 13-708(A) for fundamental error. *Large*, 2014 WL 1226731 at *5, ¶ 18. In establishing fundamental error, a defendant must show "both that fundamental error exists and that the error in his case caused him prejudice." *State v. Henderson,* 210 Ariz. 561, 567, ¶ 20, 115 P.3d 601, 608 (2005). Here, for Defendant to show prejudice, he must establish that "a reasonable jury, applying the appropriate standard of proof, could have reached a different result than did the trial judge." *Id.* at 569, ¶ 27, 115 P.3d at 609.

**¶24** Because a jury was required to determine the sentencing enhancement under A.R.S. § 13-708(A), the trial court erred in failing to submit this issue to a jury. However, despite this error, we conclude Defendant suffered no prejudice.

**¶25** Based on our review of the record, there is overwhelming evidence showing that Defendant was on community supervision at the time he committed these offenses. At Defendant's February 2013 hearing regarding his prior felony convictions, the State proved beyond a reasonable doubt that Defendant had been convicted of three prior felonies, and that Defendant was sentenced to prison for all three felonies on October 31, 2007. Based on Defendant's DOC records, it was established that Defendant was placed on community supervision on July 19, 2011. Defendant's DOC records further showed that he absconded from community supervision on November 11, 2011, fifteen days before he committed the current offenses. There is no evidence in the record challenging the accuracy of these DOC records.

**¶26** Accordingly, we conclude there was no reversible error, and therefore affirm Defendant's sentences.[5]

**Conclusion**

**¶27** We have read and considered counsel's brief, carefully searched the entire record for reversible error and found none. *Clark*, 196 Ariz. at 541, ¶ 49, 2 P.3d at 100. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and substantial evidence supported the finding of guilt. Defendant was present and represented by counsel at all critical stages of the proceedings. At sentencing, Defendant and his counsel were given an opportunity to speak.

---

[5] We also note that with respect to counts one through six and counts eleven through sixteen, the trial court imposed aggravated sentences. Thus, whether or not the trial court concluded it had the authority to impose less than a presumptive sentence as to these counts is essentially moot.

**¶28**        Counsel's obligations pertaining to Defendant's representation in this appeal have ended. Counsel need do nothing more than inform Defendant of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Defendant shall have thirty days from the date of this decision to proceed, if he so desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: MJT