665 P.2d 570

STATE of Arizona, Appellee,

v.

David Allen FINEHOUT, Appellant.

No. 5372.

Supreme Court of Arizona,
In Banc.

May 25, 1983.

Rehearing Denied June 28, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Linda A. Akers, and Michael D. Jones, Asst. Attys. Gen., Phoenix, for appellee.

Michael D. Tidwell, Apache Junction, for appellant.

CAMERON, Justice.

Defendant, David Allen Finehout, was convicted of robbery, A.R.S. § 13–1902(A), burglary, A.R.S. § 13–1507(A), and first-degree murder, A.R.S. § 13–1105(A)(2), and sentenced to life imprisonment without possibility of parole for twenty five years, A.R.S. § 13–703. We have jurisdiction to review his conviction and sentence under Ariz. Const. art. 6 § 5(3), and A.R.S. §§ 13–4031, 13–4035.

The issue we must resolve on appeal is whether the trial court erred in refusing to suppress the defendant's confessions before conducting a trial by submission.

The facts needed to resolve the issue are these. The defendant was apprehended at a campsite in Pinal County and taken to the Apache Junction police department at 10:30 p.m. on 26 January 1981. At 11:15 p.m., after being advised of his rights to silence and to legal representation, the defendant signed a waiver of these rights, and was questioned by Sergeant Garcia and Detective Jones between 11:35 and midnight on 27 January. The defendant's statements were not incriminating and their admission is not questioned on appeal. A second interrogation began at 1:55 a.m., and the following occurred at about 2:10 a.m. on 27 January:

JONES: You might as well be honest with us, cause you know—

DEFENDANT: I'm trying to be honest.

JONES: No you're not 'cause everytime we ask you something—

DEFENDANT: Well, I ain't going to say any more.

JONES: Every time we ask you something you tell us something that's not wrong and then when we correct you on it you tell us the truth. So, why can't you just be honest with us and

tell us the whole truth. That's all we're asking for.

DEFENDANT: I know.

JONES: We're simply asking the truth, and I've, I've, him and me has been as fair to you tonight as we can be you know?

DEFENDANT: I know.

JONES: Well why don't you just be honest with us and tell us the truth? I mean is that too much to ask?

DEFENDANT: No.

JONES: Then why don't you tell the truth for a while?

GARCIA: Well, the more you lie, the more trouble you're going to be in.

DEFENDANT: I know.

GARCIA: It's better just to be honest and tell the truth.

DEFENDANT: I left Cobb's Restaurant and went down to Sambo's. I sat there all night long. (session continues)

When questioned by defendant's counsel, Sergeant Garcia testified:

Q: My question is why didn't you stop questioning when he said that?

A: I don't know. He hadn't wished—he hadn't requested to talk to an attorney or anything else.

 \* \* \* \* \* \*

Q: When he said, "I ain't going to say any more," is it fair to say you just ignored that statement by Mr. Finehout and kept on going with your questioning?

A: Yes.

Detective Jones also testified:

Q: And when he said, "I ain't going to say no more," is it fair to say that you basically ignored that statement by him?

A: It would be fair to say that I don't recall him making that statement to me.

Q: Do you think if I played the tape recording back that it would refresh your recollection?

A: Oh, I am not doubting that it's on there. I am just saying that I do not recall him saying that statement at the time.

Q: When he said, "I ain't going to say no more," you didn't stop your questioning of him, did you?

A: No, sir. It appears that the questioning went on.

This second interrogation continued until about 2:37 a.m., at which time, after the officers had told the defendant that they had a set of fingerprints and palm prints, as well as hair samples, the defendant stated:

DEFENDANT: I'm not going to say anymore until I talk to a lawyer.

GARCIA: Okay. Fine.

DEFENDANT: Fine.

At that point, Sergeant Garcia began to put his cassette recorder away. During this activity, Garcia told the defendant that he was under arrest for lying to a police officer, and that he should have an employee of the sheriff's office or a jailer contact Garcia if "he should change his mind about having an attorney present or wanting to talk to an attorney." According to the police, the defendant asked them why he would want to talk to them, at which time Detective Jones said "It's just better to tell the truth and get it out in the open." After a momentary pause in the conversation, the defendant indicated that he wanted to tell the truth, and the officers asked his permission to resume tape recording his statements. Sergeant Garcia reminded the defendant of his rights, though he did not read them to him, and the defendant indicated he was waiving them. The tape recorder was switched on again at 2:41 a.m., and the defendant subsequently confessed to the homicide. The defendant was then arrested for murder, robbery and burglary. A second confession, made after a re-reading of an accused's rights to silence and representation, was taken at 12:30 p.m. on 27 January 1981, and the defendant made his initial appearance later that afternoon.

The defendant's motion to suppress his confessions was denied, and the matter was thereafter tried by submission on 11 May 1981. The two confessions made by the defendant on 27 January constituted the

bulk of the state's evidence at trial, which resulted in his conviction. Sentence was imposed on 6 July 1981, at which time the court rendered judgments of guilt of Burglary of a Residential Structure, Robbery, and First Degree Murder. On 9 October 1981 a hearing was conducted on the defendant's Rule 24.2 motion to vacate judgment. On 14 July 1982, the trial court denied the defendant's motion to vacate judgment. The appeals from the trial judgment and sentences and the denial of the Rule 24.2 motion were consolidated for our consideration.

## FIFTH AMENDMENT CLAIMS

 The defendant asserts that his confession made in the early morning hours of 27 January 1981 was obtained in violation of his state and federal constitutional rights not to incriminate himself. The defendant attempted to invoke these rights on two occasions. The first occasion was when the defendant, in response to police accusations that he was lying, stated "Well, I ain't going to say any more."

We have stated:

Confessions are prima facie involuntary and the burden is on the State to show a confession was freely and voluntarily made. (Citation omitted.) That burden is by a preponderance of evidence. (Citation omitted.) Courts must look to the totality of the circumstances surrounding the giving of the confession, presented to them at "voluntariness hearings," and decide whether the State has met its burden. (Citations omitted.) *State v. Knapp,* 114 Ariz. 531, 538, 562 P.2d 704, 711 (1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).

If a person subjected to custodial interrogation invokes his right to silence, the interrogation must cease. The United States Supreme Court has stated:

* * * if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own

does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

\* \* \* \* \* \*

* * * If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. * * * (Footnote omitted.) *Miranda v. Arizona,* 384 U.S. 436, 445, 473–74, 86 S.Ct. 1602, 1612, 1627–28, 16 L.Ed.2d 694, 707, 723 (1966).

The state contends, however, that the assertion "I ain't going to say any more" is in context ambiguous, and that the ambiguity entitled the detectives to continue their interrogation. We disagree. Even if the defendant's assertion is susceptible to more than one interpretation, the limit of permissible continuing interrogation immediately after the assertion would be for the sole purpose of ascertaining whether the defendant intended to invoke his right to silence, *cf. State v. Hicks,* 133 Ariz. 64, 74, 649 P.2d 267, 277 (1982), or to waive this right. This limited additional questioning for clarification is consistent with the United States Supreme Court's mandate that the person in custody's "right to cut off questioning" must be "scrupulously honored." *See Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975).

 The state contends further, however, that mere advice or exhortation by police officers to an accused to tell the truth is not interrogation and does not render a subsequent confession involuntary, citing our Court of Appeals' opinion in *State v.*

**230**

*Hall,* 120 Ariz. 476, 479, 586 P.2d 1288, 1291 (App.), vacated 120 Ariz. 454, 586 P.2d 1266 (1978). We note that *Hall,* supra, preceded the definition of interrogation set forth by the United States Supreme Court which stated that interrogation

> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response. (Footnotes omitted, emphasis in original.)

*Rhode Island v. Innis,* 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 308 (1980).

The focus in ascertaining whether particular police conduct amounts to interrogation, then, is not on the form of words used, but the intent of the police officers and the perceptions of the suspect. *United States v. Thierman,* 678 F.2d 1331, 1335 (9th Cir. 1982). In the instant case, the detectives' repeated urging of the defendant to tell the truth was, under the circumstances, interrogation because the detectives should have known that their appeals for honesty were reasonably likely to elicit an incriminating response. Innis, supra. They did not, then, "scrupulously honor" defendant's right to cut off questioning as required by Mosley, supra.

■ The defendant's second attempt to invoke his privilege against self-incrimination came at the moment he stated "I'm not going to say anymore until I talk to a lawyer." We believe this to be an unequivocal request for an attorney which triggers the *Miranda* right to be free of interrogation until a person in custody has consulted with a lawyer. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386 (1981); *Rhode Island v. Innis,* supra, 446 U.S. at 297, 100 S.Ct. at 1688, 64 L.Ed.2d at 306 (1980); *see Fare v. Michael C.,* 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197, 209 (1979); *Michigan v. Mosley,* supra, 423 U.S. at 104, n. 10, 96 S.Ct. at 326, n. 10, 46 L.Ed.2d at 321, n. 10; *Miranda v. Arizona,* supra, 384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723. *Miranda,* supra, specifically stated that:

> * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent. Id.

In the instant case, the detectives ostensibly terminated the interrogation by turning off the tape recorder, but Detective Jones took the opportunity to remind the defendant that "it's just better to tell the truth and get out in the open," which, as we have noted above, constituted continuing interrogation. *Rhode Island v. Innis,* supra.[1]

1. We also note that Detective Garcia's statement that defendant was being held for "lying to a police officer," immediately followed by the suggestion to contact the detective if defendant "should change his mind about having an attorney present or wanting to talk to an attorney," may have been the kind of attempt to persuade a person in custody to reconsider his position on the exercise of his rights that the Court in *Mosley,* supra, 423 U.S. at 105–06, 96 S.Ct. at 327, 46 L.Ed.2d at 322, implied

■ Nor do we find that the defendant's statement at this point started "further communication, exchanges or conversations with the police" that under *Edwards v. Arizona,* supra, would allow the court to find the defendant waived his previously-invoked right to counsel. *See id.,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. The interrogation session that began at 1:55 a.m. was never completely terminated; conversation between the detectives and the defendant, including a statement which Detective Jones acknowledged to be a questioning "technique," continued while Detective Garcia was putting away the cassette recorder. There was no lapse in contact, temporal or spatial, between the defendant and law enforcement agents that would justify the conclusion that there was a break in the interrogation and that the defendant "reopened the dialogue with the authorities." *Id.* at n. 9. *Cf. Michigan v. Mosley,* supra, 423 U.S. at 104–06, 96 S.Ct. at 327, 46 L.Ed.2d at 321–22. The defendant's statements made between 2:41 a.m. and 3:00 a.m. on 27 January 1981 should have been excluded from evidence, and it was an abuse of discretion by the trial court to fail to do so.

## SUBSEQUENT CONFESSION

■ At 12:30 p.m. on 27 January 1981 the defendant gave a second statement, which was transcribed, in which he admitted to breaking and entering the mobile home, restraining the victim, and taking her money. At the beginning of the tape, he was given a full set of *Miranda* warnings, and he indicated his willingness to answer questions after acknowledging his understanding of his rights. The record does not reflect that he had consulted with an attorney between the time of his earlier statement and 12:30 p.m.; nor does it re-

flect that the defendant initiated the additional interview.

We believe that this statement violates the mandate of the United States Supreme Court in *Miranda* and following cases. The defendant, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." *Edwards v. Arizona,* supra, 451 U.S. at 484–85, 101 S.Ct. at 1885, 68 L.Ed.2d at 386. *Accord, State v. Emery,* 131 Ariz. 493, 497–98, 642 P.2d 838, 842–43 (1982). Nor can a waiver of the defendant's right to have counsel present during the interrogation be established "by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona,* supra, 451 U.S. at 484, 101 S.Ct. at 1884, 68 L.Ed.2d at 386; *see also State v. Hicks,* supra, 133 Ariz. at 74, 649 P.2d at 277. As we have noted above, confessions are presumed involuntary and the burden is on the state to show by a preponderance of the evidence that a confession was freely and voluntarily given, *State v. Knapp,* supra. We believe that it was error to admit the statements.

The defendant's conviction is reversed, and the matter is remanded to the trial court for a new trial or further proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.

---

would not meet the standard of "scrupulously

honoring" the right to terminate questioning.