768 P.2d 143

**STATE of Arizona, Appellee,**

v.

**Larry Daniel STAATZ, Appellant.**

**No. CR–86–0374–AP.**

Supreme Court of Arizona,
En Banc.

Dec. 29, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Janet Keating, and Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Francisco Leon, P.C. by Francisco Leon, Tucson, for appellant.

HOLOHAN, Justice.

The defendant, Larry Staatz, was convicted of murder in the first degree and two counts of theft of property over $1,000. He was sentenced to life imprisonment on the murder count and to concurrent 13.25 year terms on each of the theft counts, to be served consecutively to the life sentence. We have jurisdiction pursuant to A.R.S. § 13–4031. We affirm.

## FACTS

The defendant met the victim, James Errara, when Errara gave him a ride when he was hitchhiking. The defendant and Errara became friendly, and Errara invited him to the trailer park where Errara lived. The defendant did some work on Errara's car and had a glass of tea with him. The next day, the defendant asked his wife to give him a ride to an area near Errara's trailer. The defendant told his wife that he was going to pick up a car and some money. The defendant later claimed that he was unable to find the person from whom he intended to borrow a car for a trip to Phoenix, so he went to Errara's house. Neighbors saw the defendant and Errara around Errara's trailer. One neighbor saw the defendant and Errara leave the trailer park together in Errara's car with the defendant doing the driving. Later in the evening the manager of the trailer park saw the defendant alone drive from the trailer park in Errara's car.

When the defendant arrived home in Errara's car, he was covered with blood and had a cut on his hand. He told his wife that the cut was from the car radio. He told her that he got a car and a diamond ring from the man he was going to see that morning. That night the defendant went to a clinic where he had his hand treated. The next morning he left the state in Errara's car.

Approximately eight days later the trailer park manager called the Pima County Sheriff's Office to report a terrible odor coming from the Errara trailer. Officers from the sheriff's office discovered Errara's body in the kitchen of his trailer. His body had approximately thirty stab wounds and was in a state of decomposition. Although there was blood in three rooms of the trailer, there were no signs of a struggle. There were indications that the body of the victim had been dragged from the dining room to the kitchen.

Defendant was arrested in the state of Washington after selling Errara's car and ring. He was returned to Arizona for trial.

After his return to Arizona the defendant was questioned by detectives from the sheriff's office. The defendant gave a statement to them about the events which occurred in the victim's trailer and admitted killing him. At trial, the defendant testified that when he was in Errara's trailer the victim made sexual advances towards him. When the defendant rebuffed him, Errara grabbed defendant's knife from the table and came after him. The defendant grabbed the knife, cutting his hand in the process. He stated that Errara then grabbed his testicles, whereupon the defendant went "berserk" and began to stab Errara until Errara let go of him. The defendant admitted that he took the ring and automobile of the victim when he left the scene.

The defendant raises the following issues on appeal:

    I.  Did the trial court err in admitting defendant's statements to the police officers?

    II.  Did the trial court err in admitting photographs of victim's body?

    III.  Did the trial court err in using the new rule of criminal procedure regarding peremptory challenges?

    IV.  Did the trial court err in instructing the jury that it must unanimously find defendant not guilty of the greater offenses before considering lesser-included offenses?

## I.  Defendant's Statements.

Prior to defendant's second trial,[1] he moved to suppress his statements to the law enforcement officers, alleging that the

---

1. Defendant's first trial ended in a mistrial.

statements were obtained in violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), after the defendant had asserted his right to counsel. In *Edwards* the Court held that if, following *Miranda* warnings, an accused requests counsel, the interrogation must cease until an attorney is present. *Id.,* 451 U.S. at 484–85, 101 S.Ct. at 1885. An accused may waive this right only by initiating further communications, exchanges, or conversations with the police. *Id.* The waiver must further be a voluntary, knowing, and intelligent relinquishment of the right to counsel. *Id.,* 451 U.S. at 482, 101 S.Ct. at 1884.

The record reflects that the defendant, after being advised of his *Miranda* rights, was asked whether he would answer questions. He responded that he would answer them, depending on the question. The investigating officers then proceeded to discuss the crime and the evidence against the defendant. The defendant stated, "Maybe I should be talking to a lawyer," or "Maybe it would be in my best interests to speak to a lawyer." [2]

The officers were then silent for about a minute. The testimony of Det. Dhaemers indicated that defendant made a statement breaking the silence:

Q. Okay. So let me ask you this: Do you recall Mr. Staatz mentioning something about he probably ought to speak to a lawyer?

[Det. Dhaemers]. Yes.

Q. And after he mentioned that, did you leave the room and did Sergeant Miranda leave the room?

A. No.

Q. Did either you or Sergeant Miranda keep talking to him?

A. No. In fact, we gave him time to decide whether he wanted to speak to us or not. And he decided to speak to us.

Q. And how did you find that out?

A. Because he continued to talk.

Reporter's Transcript (R.T.) July 15, 1985 at 56.

The defendant testified:

Q. And when you said, "I think it would probably be a good idea if I talked to my attorney," what happened next?

[The Defendant]. I know that they—there was some more talk from them. Which I do not remember. At some point shortly after that for reasons still unknown even to myself I decided that I would talk to them.

Q. Did they, how long did you wait to decide that?

A. Maybe a minute, maybe two minutes.

R.T. Aug. 1, 1983 at 34.

THE COURT: They gave you—after a minute or so you decided to go ahead and talk to them?

THE DEFENDANT: For some reason I decided to go ahead and talk with them.

COURT: And you did that voluntarily, is that right?

THE DEFENDANT: To be truthful, to the best of my knowledge, yes.

R.T. Aug. 1, 1983 at 36.

The trial court found that the defendant's statements were "equivocal" regarding counsel and did not rise to the level of a request for counsel. The trial court found no evidence that the police subsequently "attempted to persuade the defendant, promise him anything or otherwise cajole him into answering." Minute Entry, Aug. 23, 1985. The court then found that defendant "voluntarily, intelligently, and knowingly made the statements without promises or threats and without invoking his right against self-incrimination or right to counsel." *Id.*

The threshold question is whether the defendant in this case actually invoked his right to an attorney. If the defendant did invoke that right, the statements are admissible only if the defendant waived the right to an˙ attorney. The defendant asserts that he may effectively invoke the right to counsel in less than positive language, and interrogation must cease.

The United States Supreme Court has not yet reached the issue of whether and when a suspect effectively invokes his

2. Neither the defendant nor the detectives were able to remember defendant's exact words.

right to counsel. Different jurisdictions have adopted varying views when addressing equivocal requests for an attorney. *See, e.g., United States v. Fouche*, 776 F.2d 1398 (9th Cir.1985), *cert. denied,* — U.S. ——, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *Martin v. Wainwright*, 770 F.2d 918 (11th Cir.1985), *cert. denied,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986); *United States v. Porter*, 776 F.2d 370 (1st Cir.1985), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987) (if request is equivocal, attempt must be made to clarify the equivocal request); *United States v. Cherry*, 733 F.2d 1124 (5th Cir.1984), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987); *People v. Kendricks*, 121 Ill.App.3d 442, 77 Ill.Dec. 41, 459 N.E.2d 1137 (1984) (defendant's statement, "maybe I need a lawyer," did not constitute sufficient invocation of counsel for interrogation to cease); *Cannady v. State*, 427 So.2d 723 (Fla.1983); *and cf. State v. Linden*, 136 Ariz. 129, 664 P.2d 673 (App.1983) (questions regarding the desirability of counsel were not an invocation of right to counsel).

■ We have adopted the position that when the request is ambiguous, police must cease interrogation or attempt to clarify defendant's request. *See State v. Finehout*, 136 Ariz. 226, 231, 665 P.2d 570, 575 (1983); *State v. Inman*, 151 Ariz. 413, 728 P.2d 283 (App.1986).

In *Finehout*, we stated, "Even if the defendant's assertion is susceptible to more than one interpretation, the limit of permissible continuing interrogation immediately after the assertion would be for the sole purpose of ascertaining whether the defendant intended to invoke his right to silence ... or to waive this right." 136 Ariz. at 229, 665 P.2d at 573 (citations omitted). In this instance, the defendant testified to differing versions of statements he made to the officers. Among differing recollections of the statements he made were: "Maybe I should be talking to a lawyer;" and "Maybe it would be in my best interests to speak to a lawyer." R.T. July 15, 1985 at 75. These statements are certainly susceptible to more than one interpretation.

The state contends that defendant was thinking out loud and did not affirmatively invoke his right to an attorney. *See Nash v. Estelle*, 597 F.2d 513 (5th Cir.1979), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). Although the defendant's statement may not have risen to the level of an affirmative invocation of counsel, it was sufficient to require the police to either cease questioning or clarify the statement. *Finehout, supra.* In this case, it appears that the police did cease their questioning.

Therefore, the critical issue under these facts is whether the defendant waived his request by reinitiating a conversation with the police. *See Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *Edwards, supra.* The initiation requirement may be satisfied by statements that "represent a desire on the part of the accused to open up a more generalized discussion relating directly or indirectly to the investigation." *State v. James*, 141 Ariz. 141, 144–145, 685 P.2d 1293, 1296–1297, *cert. denied,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 332 (1984) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983)).

The United States Supreme Court held that the defendant's statement, "Well, what is going to happen to me now," initiated the type of conversation with the police which satisfied the *Edwards* rule that for a waiver to occur, the defendant must reopen the conversation with the police. Thus, most indications of willingness to continue to speak may satisfy the *Edwards* rule. The Court did, however, point out certain types of questions that would not reopen a conversation, such as, "May I get a drink?", or, "May I use the telephone?" *Bradshaw*, 462 U.S. at 1045, 103 S.Ct. at 2835.

■ In the present case, the investigating officer testified that defendant continued to speak after the silence following his equivocal request. The defendant confirmed this testimony. There is competent evidence in the record that a valid waiver occurred. The trial court occupies the position of resolving factual disputes, and

where conflicting inferences may be drawn from the evidence, we must resolve the issues in a manner most likely to uphold the trial court's findings. *Whittemore v. Amator*, 148 Ariz. 173, 713 P.2d 1231 (1986). Although the trial court did not explicitly find waiver, we believe that waiver is implicit in its findings. *See James*, 141 Ariz. at 145, 685 P.2d at 1297–1298. The trial court's determination will not be upset on appeal absent clear and manifest error. *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978).

■ The final inquiry is, under the totality of the circumstances, whether defendant's confession was knowingly, voluntarily, and intelligently made. *Bradshaw*, 462 U.S. at 1046, 103 S.Ct. at 2835. The trial court made the determination that the defendant's statements were voluntary. Absent a clear abuse of discretion, a trial court's evidentiary finding will not be overruled. *State v. Oliver*, 158 Ariz. 22, 760 P.2d 1071 (1988). The defendant had two prior convictions and was familiar with the system. He had obtained counsel in his previous dealings with the law and was not unfamiliar with the procedure for obtaining counsel. Under the total circumstances, the trial court's finding that the statements were voluntarily made was not error.

■ Even if the defendant's confession was admitted in violation of *Edwards*, the error was harmless. The evidence against the defendant was overwhelming, and his testimony at trial essentially was identical to his earlier confession and supported his theory of self-defense. We find no prejudice from admission of the statement.

## II. Photographs.

The defendant contends that the admission of certain photographs illustrating Errara's decomposed body with stab wounds on it was inflammatory and unfairly prejudicial to the defendant. In order to be properly admitted, photographs must be relevant. If relevant, the probative value of the photographs must outweigh the prejudicial value of the photographs. *State v. Moorman*, 154 Ariz. 578, 744 P.2d 679

(1987); *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983).

■ The state contends that the photographs were relevant to rebut the defendant's theory of self-defense, and, although the diagrams of the defendant's body and the testimony of the autopsy doctor were helpful to the jury, they did not show the wounds in detail. We agree. Photographs are properly admissible for several purposes: victim identification, nature and location of the fatal injury, illustration of testimony corroboration of the state's theory of how and why the homicide was committed, and proof of the *corpus delicti*. *State v. Castaneda*, 150 Ariz. 382, 724 P.2d 1 (1986).

We believe that there is a sound basis for inclusion of these photographs. The defendant's theory was self-defense. He attempted to convince the jury that he stabbed Errara only until Errara let go of his testicles. The nature and location of the stab wounds were highly probative to aid the jury in determining the truth of the defendant's assertions, as well as corroborating and illustrating the medical examiner's testimony. *See State v. Rivera*, 152 Ariz. 507, 515, 733 P.2d 1090, 1098 (1987).

■ Nor were the pictures inflammatory. They showed no blood and revealed only the areas affected by the stab wounds. The photographs were explicit; however, the trial court has a considerable measure of discretion in admitting or excluding photographs and the fact that they are gruesome is not in and of itself a valid objection. *State v. Thomas*, 110 Ariz. 120, 515 P.2d 865 (1973). We believe the trial court correctly concluded that the probative value of the photographs outweighed their prejudicial effect.

## III. Peremptory Challenges.

The defendant argues that the trial court improperly required the defendant to use the new procedure for exercising peremptory challenges under a recently amended rule of criminal procedure instead of the old rule which had been in effect at the time of the crime. Rule 18.5, Ariz.R. Crim.P., 17 A.R.S. Formerly, Rule 18.5 pro-

vided that the peremptory challenges were to be exercised first completely by the state, then by the defendant. The rule was amended in 1986, between the time of defendant's first and second trial. The rule now provides that following examination of the jurors, the parties shall exercise the peremptory challenges to jurors *by alternating strikes*, beginning with the prosecutor, until the peremptory challenges are exhausted. Rule 18.5 (emphasis added).

■ Defendant challenges the use of the new rule as an ex post facto application which impairs a substantial right. The ex post facto clause is a limitation on the legislature, *see Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), and does not of its own force apply to the judicial branch of government. *Frank v. Mangum*, 237 U.S. 309, 344, 35 S.Ct. 582, 593, 59 L.Ed. 969 (1915); *and see State v. Steelman*, 120 Ariz. 301, 585 P.2d 1213 (1978).

Nonetheless, state courts operate under the constraints of the due process clause of the Fourteenth Amendment. Due process is implicated whenever there is a deprivation of a substantive right of a defendant. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). A defendant, however, has no vested right to a particular mode of procedure. *Denver & Rio Grande Western Railroad Company v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967).

The distinction between procedural and substantive rights was described in *State v. Birmingham*, 96 Ariz. 109, 392 P.2d 775 (1964):

> Uniformly the substantive law is that which creates, defines and regulates rights; whereas the adjective, remedial or procedural law is that which prescribes the method of enforcing the right or obtaining redress for its invasion.

96 Ariz. at 110, 392 P.2d at 776.

■ The alternating strike rule does not create, define, or regulate a right. It simply specifies the means by which defendant's right to exercise peremptory challenges is implemented. The challenged rule is procedural, and the defendant was not deprived of any substantive right by enforcement of the amended rule.

Defendant, however, argues that the new rule affects a substantial right because, under a standard probability theory, alternating strikes with the state dilutes the effectiveness of the defendant's peremptory strikes. We find appellant's contention without merit. Defendant incorrectly utilizes standard probability theory in analyzing the rule because the peremptory strikes are not made in random fashion. Freund & Williams, *Elementary Business Statistics* at 179–180 (3rd ed. 1977). Before the rule change, the defendant was entitled to ten peremptory strikes, and after it, he is still entitled to ten peremptory strikes. The rule does not impair defendant's right to exercise peremptory challenges. Any disadvantage perceived by the defendant in the application of the amended rule is not a deprivation of due process.

We hold that the mere probability that defendant may use a strike to remove a jury member who might have been struck by the state under the old rule does not rise to the level of a substantial right. *Industrial Commission v. Cameron*, 103 Ariz. 613, 447 P.2d 871 (1968). As a procedural rule, it is properly applicable as of its effective date.

IV. Lesser–Included Offense.

Defendant contends that the trial court erred in instructing the jury that before they could consider the lesser-included charge they must unanimously find defendant not guilty of the greater offense.

■ Defendant concedes that the trial court's instruction conformed to our holding in *State v. Wussler*, 139 Ariz. 428, 430, 679 P.2d 74, 75–76 (1984). R.T. Oct. 3, 1986 at 12. Defendant asks us, however, to reconsider our holding in *Wussler*. We are not persuaded to reconsider the matter, although, as we have previously noted, the instruction has both benefits and detriments. *Wussler*, 139 Ariz. at 430, 679 P.2d at 76; *but cf. United States v. Jackson*, 726 F.2d 1466 (9th Cir.1984) (when defend-

ant objects to this instruction, the court must temper it).

Defendant also contends that the present case is distinguishable from *Wussler* because, in this case, the defendant objected to the challenged instruction at the time of trial. The suggested distinction is without merit because we considered the issue in *Wussler* on the merits despite the absence of an objection in the trial court. The trial court did not err in giving the challenged instruction.

We have reviewed the record and find no fundamental error. The judgment of conviction is affirmed.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

FELDMAN, Vice Chief Justice, specially concurring.

I agree with the proposed opinion except on the instruction authorizing the jury to consider lesser included offenses. On that matter, I still adhere to the views expressed in my special concurrence in *State v. Wussler*, 139 Ariz. 428, 432, 679 P.2d 74, 78 (1984).