837 P.2d 1184

**STATE of Arizona, Appellant,**

v.

**Dan Morgan THORNTON, Appellee.**

**No. 1 CA–CR 90–1565.**

Court of Appeals of Arizona, Division 1, Department D.

April 21, 1992.

Review Denied Oct. 20, 1992.

Richard M. Romley, Maricopa County Atty. by Arthur Hazelton, Deputy County Atty., Phoenix, for appellant.

Castro, Zipf & Marable by Ernesto R. Castro, Cottonwood, for appellee.

## OPINION

GERBER, Judge.

A jury found appellee Thornton guilty of driving under the influence of intoxicating liquor while his license was suspended, revoked, canceled, or refused, a class five felony. He moved for a new trial based on a violation of his right to counsel. The trial court granted him a new trial. The state appeals to request a reinstatement of the verdict. The case raises important issues regarding suppression of evidence.

## FACTS

At a pretrial voluntariness hearing, Phoenix Police Officer Zollars (Zollars) testified that he stopped Thornton on suspicion of driving under the influence after Zollars saw him cross several lanes of traffic. At the scene Thornton began but then refused to complete the field sobriety tests. He was then arrested. The officer read *Miranda* rights to him at the police station.

During interrogation in the twenty-minute observation period prior to the breathalyzer test, Zollars asked Thornton what day of the week it was. Thornton answered, "talk to my lawyer." Zollars allegedly asked him if he would like to make a phone call after the first "talk to my lawyer" response but Thornton did not elect to make any calls. He continued to answer Zollars' questions with "talk to my lawyer" or similar inappropriate responses. On di-

rect examination in the voluntariness hearing, Zollars testified as follows about this dialogue:

Q. Did you ask him whether he had been to the dentist or doctor in the last two weeks?

A. He said, "talk to my lawyer."

Q. Did you ask him "have you taken any medication in the last 24 hours?"

A. He said, "talk to my lawyer."

Q. Did you ask him if he had diabetes?

A. He said "talk to my lawyer."

Q. Did you ask him whether he had been taking any insulin for any reason?

A. He said no.

Q. Did you ask him if he had any allergies?

A. He said, "talk to my doctor."

Q. Did you ask him if his allergies were bothering him now?

A. He said "talk to my doctor."

Q. Did you ask him if he had used mouthwash or breath spray within the last two hours?

A. He said, "talk to my wife."

Zollars testified that he finished the alcohol assessment questionnaire and then explained the implied consent warning to Thornton. Thornton then refused to take the breathalyzer test.

Most, but not all, of this testimony stands uncontradicted. For his part Thornton testified that the phrase "talk to my lawyer" was his request for counsel. Thornton also testified that he refused the breath test because his attorney was not present.

The trial court suppressed evidence of this dialogue after the first "talk to my lawyer" remark. It ruled that Thornton's responses "talk to my lawyer" invoked his right to silence and that the further interrogation violated his *Miranda* rights. The trial court also denied the motion to suppress evidence of his refusal to take the breathalyzer test. In the order granting a new trial, the trial judge stated that he had committed reversible error in admitting the

breath test refusal after suppressing the dialogue. For this reason he granted a new trial.

## APPELLATE ISSUES

On appeal the state contests the need to suppress the breath test refusal. The state concedes that the dialogue could be suppressed because of violation of Thornton's right to silence; the state asserts, however, that this violation has no bearing on the refusal issue.

■ The standard of review for a grant of a new trial is abuse of discretion. *State v. Ornelas,* 15 Ariz.App. 580, 582, 490 P.2d 25, 27 (1971). The standard of review for trial court rulings on motions to suppress is clear and manifest error. *State v. Smith,* 136 Ariz. 273, 275, 665 P.2d 995, 997 (1983). On these bases, we find the trial court erred in both respects.

*Admission Into Evidence of Breath Test Refusal*

■ A DUI suspect's refusal to take the breath test is generally admissible. Under Ariz.Rev.Stat.Ann. ("A.R.S.") § 28–692(K), "if a person under arrest refuses to submit to a test ... evidence of refusal is admissible in any civil or criminal action or proceeding ...". A refusal is described as a failure to "expressly agree to the test or successfully complete the test ...". A.R.S. § 28–691(B). This statutory provision is constitutional. *State v. Superior Court of Pima County,* 155 Ariz. 408, 411, 747 P.2d 569, 572 (1987). Refusal to take the chemical breath test is not testimonial evidence; it is considered physical evidence beyond the reach of the privilege against self-incrimination. Accordingly, it is generally admissible without fifth amendment concerns. *Id.* Because the refusal is not considered testimonial evidence, the lack of voluntary, knowing, and intelligent refusal is irrelevant. *Id.*

■ The only exception to admission of the refusal in a criminal DUI case arises when the defendant's right to counsel is denied. Thus the trial court should suppress evidence of a breath test refusal if the police unnecessarily deny a suspect's request to speak with an attorney prior to the test, *Kunzler v. Pima County Superior Court,* 154 Ariz. 568, 570, 744 P.2d 669, 671 (1987), or if an officer instructs a suspect that no contact with an attorney is allowed prior to the test, *State v. Juarez,* 161 Ariz. 76, 81, 775 P.2d 1140, 1145 (1989). Similarly, if an officer's confusing directions lead an arrestee to believe that he cannot consult an attorney, evidence of refusal is suppressed absent evidence that consultation with counsel hinders the investigation. *See Saenz v. Rodriguez,* 163 Ariz. 386, 388, 788 P.2d 119, 121 (App. 1989).

Thornton testified at the voluntariness hearing that the "talk to my lawyer" command was his way of saying "I want my lawyer" and that Zollars never stopped the questioning to offer an opportunity to call his lawyer. Thornton also testified that he did not receive the opportunity to make a phone call until the end of the paperwork, again contradicting the testimony by Zollars. However, Thornton did not testify that Zollars denied a specific request to contact a lawyer, nor did Thornton claim that the implied consent instructions led him to believe that consultation with an attorney was not allowed prior to the test. The court found his statement was a violation of the right to remain silent, not a request for counsel. These facts distinguish Thornton's situation from the narrow exception to the general admissibility of breath test refusals. *Juarez,* 161 Ariz. at 81, 775 P.2d at 1145; *Kunzler,* 154 Ariz. at 570, 744 P.2d at 671.

■ Admissibility of the breath test refusal is, if anything, undergoing expansion. The United States Supreme Court has recently held that statements made in response to a request to take a breath test are not the product of interrogation, do not require *Miranda* warnings, and are admissible. *Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 2652, 110 L.Ed.2d 528 (1990). Consistent with this view, the state's comment at trial on refusal does not compel a suspect to incriminate himself. *Id.* at n. 19 (citing *South Dakota v. Neville,* 459 U.S. 553, 564, 103 S.Ct. 916, 922, 74

L.Ed.2d 748 (1983)). The Supreme Court makes no distinction between oral refusal and physical conduct amounting to refusal. Both modes of refusing are treated alike regarding admissibility; the fifth amendment is involved in neither situation. Notably, unlike the defendant in *Muniz*, Thornton did receive *Miranda* warnings.

In light of these principles, we conclude that the trial court erred in granting a new trial. Refusal to submit to the breath test is not testimonial evidence. No exception applies; the officer did not deny any specific request by Thornton to speak with an attorney. Admitting the breath test refusal into evidence was neither reversible error nor cause for a new trial.

*Suppression of the Dialogue*

Although the suppression of the "talk to my lawyer" dialogue is raised but not contested in detail on appeal, we discuss it because the trial court explicitly based its grant of a new trial on its belief that admitting the breath test refusal was inconsistent with its previous suppression of the "talk to my lawyer" dialogue, i.e., the trial court seems to have concluded that suppression of the dialogue mandated suppression of the refusal. This supposed link deserves brief attention.

A knowing and intelligent waiver of *Miranda* rights may be shown by a suspect's conduct when he answers questions after the police give proper warnings. *State v. Tapia*, 159 Ariz. 284, 286–87, 767 P.2d 5, 7–8 (1988). Waiver of the right to counsel once invoked depends on the facts and circumstances of each case, including the background, experience, and conduct of the accused. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). The minimum required for invoking the right to counsel is a statement that shows a desire for an attorney during custodial interrogation. *McNeil v. Wisconsin*, — U.S. —, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991). If the request is ambiguous, the police must cease questioning or attempt to clarify the request. *State v. Staatz*, 159 Ariz. 411, 414, 768 P.2d 143, 146 (1988). Comments such as "maybe I should be talking to a lawyer" or "maybe it would be in my best interests to speak to a lawyer" have been held sufficiently ambiguous as to require clarification, even if not a clear invocation of the right to counsel. *Id.* at 414, 768 P.2d at 147.

In the present case, Zollars attempted to clarify defendant's "talk to my lawyer" commands. Thornton admitted that he responded to several questions with that command. However, his situation differs from *State v. Flower*, 161 Ariz. 283, 778 P.2d 1179 (1989), where the officers conceded that they had violated the defendant's right to counsel after the defendant had requested an attorney. *Id.* at 287, 778 P.2d at 1183.

In the present context, we cannot find defendant's remarks to constitute even an ambiguous invocation of the right to counsel. Thornton's "talk to my lawyer" response in the same context with the "talk to my wife" and "talk to my doctor" responses appears an exercise in flippancy rather than a constitutional demand for a lawyer. Thornton did not refuse to answer questions. He made no other request for counsel. He elected not to telephone a lawyer when given two opportunities to do so. All these factors taken in context lead us to conclude that he did not invoke his right to counsel. Accordingly, his statements to Zollars should not have been suppressed.

We vacate the order granting a new trial and remand for reinstatement of the guilty verdict and for sentencing.

TAYLOR, P.J., and SHELLEY, J., concur.

NOTE: The Honorable Melvyn T. Shelley, a retired judge of the Court of Appeals, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. VI, § 20.