IN THE COURT OF APPEALS



FILED BY CLERK

DEC 31 2008

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2008-0035 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STEVE DWAYNE SZPYRKA, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20063298

Honorable Edgar B. Acuña, Judge

REVERSED AND REMANDED

---

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Kathryn A. Damstra
Tucson
Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Scott A. Martin
Tucson
Attorneys for Appellant

---

E C K E R S T R O M, Presiding Judge.

¶1 After a jury trial, Steve Szpyrka was convicted of theft of a means of transportation, burglary in the third degree, and possession of burglary tools. The trial court sentenced him to presumptive, concurrent terms of imprisonment, the longest of which is 3.5 years. Szpyrka contends his statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and the trial court should have suppressed them. We agree and reverse his convictions.[1]

¶2 Szpyrka argues the trial court erred when it denied his motion to suppress the statements he made to a police detective after he had twice invoked his Fifth Amendment rights under *Miranda*. "We review a trial court's decision on a motion to suppress evidence for an abuse of discretion" and view the evidence in the light most favorable to upholding the trial court's ruling, considering only the evidence presented at the suppression hearing. *State v. Bentlage*, 192 Ariz. 117, ¶ 2, 961 P.2d 1065, 1066 (App. 1998); *see also State v. Spears*, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996). However, we review the court's ultimate legal conclusions de novo. *State v. Gay*, 214 Ariz. 214, ¶ 30, 150 P.3d 787, 796 (App. 2007).

---

[1]Because Szpyrka's statements after he invoked the right to remain silent will not be admissible in a second trial on these charges and, thus, "a second trial will not necessarily be an evidentiary or strategic duplicate of the first," we need not address the other issues Szpyrka has raised in this appeal. *State v. Coghill*, 216 Ariz. 578, n.9, 169 P.3d 942, 950 n.9 (App. 2007) (when reversing conviction on one ground, court need not address other issues unlikely to recur on retrial).

¶3        Here, the court considered the transcript of Szpyrka's statements to the detective and the arguments of counsel in ruling on the motion.[2]  After Szpyrka had been read the *Miranda* warnings and had stated he understood them, the following exchange occurred:

> [Detective]:  Okay.  Having been advised of those rights and understanding those right[s], you still want to talk to me?
>
> [Szpyrka]:  I got nothin' to say.
>
> [Detective]:  All right.  So is that a no?
>
> [Szpyrka]:  I ain't got nothin' to say.
>
> [Detective]:  Okay.  Steve, I just need a yes or no.  It's kind of a technical question.  Do you . . . want to give your side of the story, yes or no?
>
> [Szpyrka]:  Okay.  Yes.
>
> [Detective]:  Yes?  Okay.  You want to answer questions if I ask them?
>
> [Szpyrka]:  Ah, perhaps.  I'm not gonna say anything . . .
>
> [Detective]:  Well, you can stop the questioning any time you want.
>
> [Szpyrka]:  Okay.

---

[2]Defense counsel did not file a written motion to suppress but, rather, made his oral motion on the first day of trial.  The trial court acknowledged the motion's untimeliness and improper form but, nevertheless, reached the issue.  Although we reverse its ruling, we acknowledge the difficulty faced by the trial court in deciding a complex legal issue without the benefit of testimony or written briefing.

The trial court denied the motion, finding that, although Szpyrka "fluctuated during the period the officer was trying to clarify," in light of "the nature of the language he used and the context of the transcript," there was no *Miranda* violation.

¶4 *Miranda* requires law enforcement officers, when questioning a suspect in custody about criminal activity, to inform the suspect he or she has the right to remain silent. 384 U.S. at 467-68. Once that has occurred, "[i]f the individual indicates *in any manner*, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-74 (emphasis added). The test for whether a suspect's invocation is sufficiently clear is an objective one. *See State v. Strayhand*, 184 Ariz. 571, 585, 911 P.2d 577, 591 (App. 1995) (applying standard of what "reasonable police officer in the circumstances" would understand to be invocation); *see also Davis v. United States*, 512 U.S. 452, 458-59 (1994) (setting forth objective test for invoking analogous right to counsel).

¶5 Szpyrka contends he "used words that no reasonable police officer could understand to be anything other than an expression of an absolute desire to stop answering police questions." He relies on several Arizona cases in which words similar to those he used—"I got nothin' to say" and "I ain't got nothin' to say"—were considered unambiguous invocations of a suspect's Fifth Amendment rights. *See State v. Bravo*, 158 Ariz. 364, 368, 373, 762 P.2d 1318, 1322, 1327 (1988) (defendant twice asserted he did not want to answer more questions); *State v. Castaneda*, 150 Ariz. 382, 386, 724 P.2d 1, 5 (1986) ("I have nothing to say" invoked right to remain silent); *Strayhand*, 184 Ariz. at 585, 911 P.2d at 591

4

(defendant's statement "'Well I don't want [to] answer anymore,' could not have been clearer" invocation of Fifth Amendment rights); *see also State v. Finehout*, 136 Ariz. 226, 229, 665 P.2d 570, 573 (1983) (suggesting words "I ain't going to say any more" unambiguously invoked Fifth Amendment). We agree and see no meaningful difference between Szpyrka's statement, "I got nothin' to say" and the locution, "I wish to remain silent." We therefore conclude the trial court erred when it determined Szpyrka's statements were ambiguous.

¶6     Notwithstanding a defendant's invocation of the right to remain silent, his subsequent statements may be used against him if the officers have scrupulously honored his right to terminate the questioning.[3] *See Michigan v. Mosley*, 423 U.S. 96, 104-06 (1975) (right to cut off questioning fully respected when police "immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation"); *Castaneda*, 150 Ariz. at 386, 724 P.2d at 5 (fruits of defendant's inculpatory post-invocation statements admissible when police scrupulously honored invocation by not questioning him further); *State v. Hicks*, 133 Ariz. 64, 74, 649 P.2d 267, 277 (1982) (defendant's "incessant rambling in the face of the detective's express willingness to terminate the interrogation shows that [defendant] retained

---

[3]The state has not argued, nor do the circumstances suggest, that any of the detective's follow-up questions could be categorized as a permissible reinitiation of questioning after honoring Szpyrka's original invocation of his right to remain silent. *See State v. Hall*, 204 Ariz. 442, ¶ 38, 65 P.3d 90, 99-100 (2003) (only when suspect invokes right to counsel is state precluded from reinitiating questioning without an attorney).

the right to cut off questioning"). If, however, a defendant's invocation is ambiguous, officers may ask questions designed solely to clarify whether the defendant intended to invoke his right to remain silent. *Finehout*, 136 Ariz. at 229, 665 P.2d at 573.

> The rule, however, permits "clarification," not questions that, though clothed in the guise of "clarification," are designed to, or operate to, delay, confuse, or burden the suspect in his assertion of his rights. Because such questions serve to keep the suspect talking, not to uphold his right to remain silent, they constitute unlawful "interrogation," not permissible clarification.

*Christopher v. Florida*, 824 F.2d 836, 842 (11th Cir. 1987); *see also Mosley*, 423 U.S. at 105-06 (following invocation of right to remain silent, officers may not try to wear down suspect's resistance so he will change his mind).

¶7    Here, we cannot agree with the state's contention, and the trial court's finding, that the detective's post-invocation questions were exclusively designed to clarify whether Szpyrka truly intended to assert his right to remain silent. Rather, those questions demonstrate both a reluctance to acknowledge the invocation and a subtle effort to persuade Szpyrka to change his mind. After Szpyrka had twice asserted he had "nothin' to say," the second time in direct response to the detective's effort to "clarify" whether he wished to answer questions, the officer persisted, suggesting incorrectly that Szpyrka had to specifically say "no" to have his invocation honored. *See Davis*, 512 U.S. at 459 (to invoke *Miranda* protections, "suspect need not 'speak with the discrimination of an Oxford don'"), *quoting Davis*, 512 U.S. at 476 (Souter, J., concurring); *United States v. Ramirez*, 79 F.3d

6

298, 304 (2d Cir. 1996) ("A suspect need not rely on talismanic phrases or any special combination of words to invoke his Fifth Amendment right to remain silent.").

**¶8**      Before Szpyrka could respond, the officer added, "[D]o you want to give your side of the story, yes or no?"—a query that strayed far from the sobering admonitions required by *Miranda*, that alluded only to the potential benefit of speaking to the officer, and that was therefore designed more to persuade than clarify.  Numerous courts have characterized similar statements as a form of interrogation aimed at eliciting inculpatory information.  *E.g.*, *Martinez v. United States*, 566 A.2d 1049, 1053 (D.C. 1989) (asking suspect to tell his side of story is interrogation under *Miranda*); *Cuervo v. State*, 967 So. 2d 155, 164-65 (Fla. 2007) (after suspect invoked right to remain silent, officer's statement that suspect could tell his side of story was interrogation and "undermined the warning . . . that *anything* he said could be used *against him* in a court of law"); *State v. Hebert*, 82 P.3d 470, 482 (Kan. 2004) (asking if defendant wanted to tell his side of story "designed to gain information from the defendant about the shooting"); *State v. Kerby*, 833 N.E.2d 757, ¶ 87 (Ohio Ct. App. 2005) (encouraging suspect to tell his side of story functional equivalent of interrogation); *cf. Finehout*, 136 Ariz. at 230, 665 P.2d at 574 (urging defendant to tell truth was interrogation when detectives "should have known that their appeals for honesty were reasonably likely to elicit an incriminating response").

**¶9**      In short, we hold that Szpyrka clearly and repeatedly expressed a desire to invoke his Fifth Amendment rights.  Because the detective did not then terminate the questioning but rather employed interrogation tactics designed to persuade Szpyrka to

7

second-guess his initial decision to invoke, the trial court erred when it denied Szpyrka's motion to suppress. *See People v. Carey*, 227 Cal. Rptr. 813, 815 (Ct. App. 1986) (trial court erred in finding that repeated statements "I ain't got nothin' to say" needed clarification, noting, "[H]ow many times must a defendant exclaim, 'I ain't got nothin' to say' to invoke his privilege to remain silent?").

¶10        On the record before us, we do not find this error to be harmless. *See State v. Hickman*, 205 Ariz. 192, ¶ 29, 68 P.3d 418, 424-25 (2003) (acknowledging use of evidence obtained in violation of *Miranda* subject to harmless error analysis). Szpyrka's statements formed the bulk of the state's case against him and were the only evidence of some of the elements of the crimes of which he was convicted. We cannot say beyond a reasonable doubt that, without Szpyrka's statements, the jury would have reached the same conclusions. *See State v. Coghill*, 216 Ariz. 578, ¶¶ 28-29, ¶ 33, 169 P.3d 942, 949, 950 (App. 2007) (error not harmless when other evidence against defendant not overwhelming and jurors could have used wrongly admitted evidence for improper purpose).

¶11        Szpyrka's convictions are reversed. We remand the case to the trial court for a new trial or further proceedings consistent with this opinion.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

_____
PHILIP G. ESPINOSA, Judge

_____
GARYE L. VÁSQUEZ, Judge